## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

KIM HEBERT ET AL                                   CASE NO.  6:23-CV-01399

VERSUS                                             JUDGE DAVID C. JOSEPH

PRECISION DRILLING CO L P ET AL          MAGISTRATE JUDGE DAVID J. AYO

## REPORT AND RECOMMENDATION

Before the Court is a MOTION TO REMAND filed by Plaintiffs Kim J. Hebert, Michael Shane Hebert, Sr., David Wayne Hebert, Cherie Hebert Serrette, Tanya Olivier, and Kim Joseph Serrette, as Trustee for the Lew Gregory Hebert 2018 Special Needs Trust.  (Rec. Doc. 30).  Oppositions were filed by Defendants Orlofsky Mineral Holdings, LLC and James and Patricia Allen Family Partnership, LP (Rec. Doc. 38); The Termo Company (Rec. Doc. 39); Zachry Exploration, LLC (Rec. Doc. 40); Precision Drilling Company, LP, Precision Drilling LLC, and Precision Drilling Holdings Company (Rec. Doc. 41); and Trinity Exploration & Production, LLC (Rec. Doc. 43).  Plaintiffs filed a reply memorandum.  (Rec. Doc. 49).  Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, the Court recommends that Plaintiffs' MOTION TO REMAND be DENIED.

## Factual and Procedural Background

Plaintiffs are owners of real property located in St. Martin Parish, Louisiana. (Rec. Doc. 1-1 at ¶2).  The property was leased in two Oil, Gas and Mineral Leases dated February 23, 2019 to Kinnickinnick Exploration Inc.  (Rec. Docs. 30-2, 30-3). One lease covered a 19.09-acre tract ("Lease 1") owned by Kim Hebert, Michael

1

Shane Hebert, Sr., and David Wayne Hebert. (Rec. Doc. 30-2). The second lease covered a 13.80-acre tract ("Lease 2") owned by Kim Hebert, Cherie Hebert Serrette, Tanya Hebert Olivier, and the Lew Gregory Hebert 2018 Special Needs Trust. (Rec. Doc. 30-3). These tracts were included with other tracts in two drilling and production units by the State of Louisiana Office of Conservation Order No. 150-K upon application of Defendant Zachry Exploration, LLC. (Rec. Doc. 30-5). That order created drilling and production units for the Marg Tex-Tweedel Zone, Reservoirs A and B, and designated the units respectively as MT-TW RA SUA and MT-TW RB SUA. (*Id*.).

Subsequent to the creation of the two drilling units, Kinnickinnick assigned various of its interests in the leases. For example, and pertinent here, Kinnickinnick assigned via a Partial Assignment of Oil, Gas and Mineral Leases dated July 1, 2021 an undivided .80% leasehold interest in nine listed leases, including Lease 2. (Rec. Doc. 1-4 and Exhibit A to same). Notably, the Lease Schedule attached to the assignment included the following:

> THIS ASSIGNMENT OF THE ABOVE CITED LEASES SHALL BE **LIMITED TO ALL LANDS WITHIN THE MT-TW RA SUA UNIT** AS DEPICTED IN THE SURVEY PLAT FILED DECEMBER 16, 2020 IN CONVEYANCE BOOK 1837, PAGE 749, INSTRUMENT NUMBER 541512 OF THE CONVEYANCE RECORDS OF ST. MARTIN PARISH, LOUISIANA. **ALL LANDS OUTSIDE THE CONFINES OF THE MT-TW RA SUA UNIT ARE RESERVED BY ASSIGNOR**.

(*Id*.) (emphasis added).[1]

---

[1] This assignment was attached as Exhibit 3 to the Affidavit of Thomas P. Orlofsky and attached to the Notice of Removal. (Rec. Doc. 1-4). The Notice of Removal also includes an affidavit from James Allen and refers to a separate assignment by Kinnickinnick to the James and Patricia Allen Family

Drilling operations commenced on the unit designated as Reservoir B. According to the Petition filed in state court, Termo was the operator and Precision Drilling Co., LP was the contract driller on two wells in Reservoir B. (Rec. Doc. 1-1 at ¶7). In June 2022, drilling on the first well commenced and encountered problems, including the unintentional sidetracking of the well. (*Id*.). On June 29, 2022, a loss of well control was experienced that resulted in a blowout and explosion. (*Id*.). This well was eventually plugged and abandoned. (*Id*. at ¶9).

In October 2022, drilling on the second well commenced within 100 feet of the first well. (*Id*. at ¶10). The drill pipe allegedly stuck at a depth of 10,909 feet, whereupon the drill pipe was abandoned downhole and the well subsequently plugged and abandoned. (*Id*.). As a result of the unsuccessful operations at the two wells, Plaintiffs filed suit alleging that Defendants' operations resulted in the blowout at the first well and the improper plug and abandon of the second well. (*Id*. at ¶¶9-12). Plaintiffs seek multiple types of damages as a result of Defendants' activities. (*Id*. at ¶51).

On October 4, 2023, Termo removed the case to this Court. (Rec. Doc. 1). Termo stated that it was served with Plaintiffs' petition on September 6, 2023, making its removal timely under 28 U.S.C. § 1446(b)(1). (Rec. Doc. 1-1 at ¶35). The Notice of Removal contended that non-diverse defendants Orlofsky Mineral Holdings, LLC and Trinity Exploration & Production, LLC were improperly joined as defendants. (*Id*. at ¶¶15-31). All defendants consented to the removal. (Rec.

---

Partnership, LP. (Rec. Doc. 1-3). This assignment is not included with the affidavit as filed. However, the affidavits are otherwise identical in substance and the Allen Affidavit quotes the same language limiting the assignment to Reservoir A.

Doc. 1-6). Plaintiffs responded with the instant motion, contending that Termo's removal was not timely and that Defendants cannot meet their burden of proving that the non-diverse defendants had been improperly joined. (Rec. Doc. 30). Timeliness and improper joinder are addressed in turn below.

## Law and Analysis

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute. *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). A federal court has "diversity jurisdiction" when the amount in controversy exceeds $75,000 exclusive of interest and costs, and the citizenship of the plaintiff is diverse from that of all of the defendants. 28 U.S.C. § 1332(a). A removing party bears the burden of establishing diversity jurisdiction. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal and in favor of remand to state court." *Id.* Here, Plaintiffs do not dispute the amount in controversy; rather, they contend that removal was untimely and that Defendants cannot meet their burden of proving the improper joinder of Orlofsky and Trinity.

### A. Timeliness of Removal

As stated above, Termo removed this case on October 4, 2023 and alleged service on September 6, 2023. Service on Precision Drilling, LLC; Precision Drilling

Holdings Co.; Precision Drilling Co., LP; and Zachry Exploration, LLC was effected on CT Corporation by East Baton Rouge Parish Sheriff's Deputy P. Garafola on September 5, 2023. (Rec. Doc. 1-1). Orlofsky was served on September 6, 2023. Auterra Energy, LLC, Michmatt, Ltd., and Allen Family Partnership, LP were served via long arm on August 30, 2023. As to Termo, Plaintiffs contend:

> Conspicuously absent from the removal notice is the service information for The Termo Company. Although Termo alleges that it "was served with Plaintiffs' Petition on September 6, 2023[,]" Termo offers no proof of service—objective or otherwise—on September 6, 2023 or any other date. The plaintiffs obtained a copy of the citation and the service return for Termo from the East Baton Rouge Parish Sheriff's Office and the 16th Judicial District Court clerk, respectively, which both indicate that Termo was served with process on August 6, 2023. Despite several other date stamps on the citation, there is no date stamp for September 6, 2023 on either page.

(Rec. Doc. 30-1 at 5) (citations & emphasis omitted).

Plaintiffs attached the service information for Termo. The Citation for Petition contains multiple stamps: one stating "Received" on September 2, 2023 by the East Baton Rouge Parish Sheriff's Office; one stating "Received and Filed" on September 20, 2023 by the St. Martin Parish Clerk of Court; and one dated August 6, 2023 by East Baton Rouge Parish Deputy J. Alfred confirming service on Corporation Services. (Rec. Doc. 30-7). The citation further states: "This Citation was issued by the Clerk for the Court for the 16th Judicial District Court, Parish of St. Martin, on the 28th day of August, 2023." (*Id*.). The Notice of Service issued on September 20, 2023 addressed to Plaintiffs' counsel states a date of service of August 6, 2023. (*Id*.). Plaintiffs further accuse Termo of usurping Orlofsky's date of service of September 6, 2023.

Termo's opposition contends that the August 6, 2023 date stamp was erroneous and that actual service was on September 6, 2023. (Rec. Doc. 39). Termo attached an affidavit from East Baton Rouge Parish Sheriff's Deputy Jonathan Alfred attesting that he served Termo on September 6, 2023. (Rec. Doc. 39-1). A "Disposition of Service" form was attached to Alfred's affidavit further documenting service on September 6, 2023. (*Id.*). In addition, a Notice of Service of Process was sent via email to Donna Sheaffer at Termo from Corporation Service Company confirming service on September 6, 2023. (Rec. Doc. 39-2).

The time to remove under 28 U.S.C. § 1446(b)(1) is clear enough:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of the summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, which period is shorter.

Plaintiffs correctly argue and Defendants do not dispute that the removal statute is strictly applied. However, Plaintiffs cannot credibly contend that Termo was served on August 6, 2023 such that the removal clock started running on that date or that the removal was untimely. As Judge Barbier in the Eastern District noted in *Backes v. Colonial Life & Accident Ins. Co.*, 2006 WL 901799 (E.D. La. Apr. 4, 2006), "Although the removal statutes must be strictly construed, they should not be so strictly construed as to impinge upon the requirements of due process." Here, *actual* service was on September 6, 2023 and is not disputed. Termo notes the absurdity of Plaintiffs' argument on this point by referencing Plaintiffs' counsel's

**August 23, 2023** letter to the St. Martin Parish Clerk of Court requesting service on all defendants. (Rec. Doc. 39-3). This letter was dated **17 days after** the date Plaintiffs contend that Termo's removal clock started running. A strict application of Section 1446(b)(1) cannot extend to achieve the absurd result of pegging a defendant's right to remove on a patently obvious scrivener's error or that a removing defendant is precluded from correcting such an error. If so, Termo's right to remove ended on the date on which it was *actually served*. Plaintiffs' motion should be denied as to the timeliness of the removal.

## B. Improper Joinder

The doctrine of improper joinder is a narrow exception to the complete diversity requirement. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573.

To establish improper joinder, the removing defendants must prove either actual fraud in the pleading of jurisdictional facts, or the plaintiffs' inability to establish a cause of action against the nondiverse party in state court. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Here, there is no allegation of actual fraud. Therefore, the test for improper joinder is "whether the defendant has demonstrated that there is

no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d at 648).

A defendant who contends that a nondiverse party is improperly joined has a heavy burden of proof. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983). The court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *Green*, 707 F.2d at 205; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

The sufficiency of a plaintiff's state court petition for purposes of the improper joinder analysis is measured under federal court pleading standards. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016). Thus, the analysis used to determine whether a defendant is improperly joined is the same as that used to determine whether a claim has been stated under Rule 12(b)(6). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.

Under that standard, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555. As part of this analysis, the court must proceed in two steps. First, the court must separate legal conclusions from well-pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. at 678-79. Second, the court must review the well-pleaded factual allegations, assume them to be true, and then determine whether they "plausibly give rise to an entitlement of relief." *Id.* at 679. "[A] single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In deciding whether a defendant was improperly joined, a court must proceed as follows:

> First, a court looks at the allegations contained in the complaint. If a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder. When "a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder. . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" "[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court."

*Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016) (internal citations omitted). Thus, a court, in its discretion, must either conduct a Rule 12(b)(6)-type analysis, or pierce the pleadings and conduct a summary inquiry. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 207.

9

Importantly, a "summary inquiry" should not be confused with a "summary judgment inquiry." In a summary inquiry, the court considers summary-judgment type evidence, but "the standard for finding improper joinder is not the summary judgment standard in which an absence in the plaintiff's proof alone can be fatal." *Davidson*, 819 F.3d at 766. Instead, the removing defendant must affirmatively preclude the possibility of recovery. *Id.* In a summary inquiry, any contested issues of fact and any ambiguities of state law must be resolved in the non-removing plaintiff's favor. *Travis v. Irby*, 326 F.3d at 649.

Plaintiffs' motion contends that Orlofsky was properly joined because obligations imposed by the Louisiana Mineral Code and Louisiana Civil Code are not divisible. The original petition seems to have anticipated such an argument being made in the future:

> Defendants who are assignees or sublessees of the mineral leases at issue are solidarily liable to Plaintiffs under the provisions of articles 128 and 129 of the Mineral Code. To the extent Defendants conducted any operations on Plaintiffs' Property pursuant to any surface leases, all defendants who are assignees of such surface leases are solidarily liable to Plaintiffs under the Civil Code provisions of solidarity. Further, all defendants are solidarily liable for the remediation demanded in this petition because the obligation to remediate is an indivisible obligation and rules of solidarity apply to indivisible obligations.

(Rec. Doc. 1-1 at ¶ 31). Plaintiffs rely primarily on Judge Minaldi's memorandum ruling in *Sweet Lake Land & Oil Co., LLC v. Exxon Mobil Corp.*, 2011 WL 5825791 (W.D. La.). Sweet Lake sued oil and gas companies for contamination alleged to have occurred during operations on its property in Cameron Parish, Louisiana. One defendant, Noble Energy, Inc., sought partial summary judgment on the issue of

solidary liability. Noble's predecessor had acquired its interests in six leases and sought to limit its potential liability by contending that it could not be held contractually liable for property damage caused by its predecessors in title and that it could not be held liable under one of the leases because no privity existed between Sweet Lake and Noble as to that lease.

Resolution of the solidarity question in *Sweet Lake* and in this case hinged upon the application of Article 128 of the Louisiana Mineral Code, which provides: "**To the extent of the interest acquired**, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessor's obligations." La. R.S. 31:128 (emphasis added).[2] Noble contended that the language in Article 128 indicated that an assignee or sublessee is not solidarily liable for the assignor or sublessee's acts pretransfer. Sweet Lake argued that the phrase "becomes responsible" in Article 128 suggested the assignee/sublessee assumes responsibility and that all parties holding interests in the leases must be held solidarily liable for the full measure of damages because the obligation to restore is an indivisible obligation under the Civil Code. Judge Minaldi agreed and found Noble solidarily liable.

Termo and Orlofsky vigorously dispute the application of *Sweet Lake*. (Orlofsky Opposition, Rec. Doc. 38 at 8-9; Termo Opposition, Rec. Doc. 39 at 11-12). They note that Noble's liability in *Sweet Lake* for its predecessor's activities derived from Noble's acquisition of an interest in the actual lease and land where the alleged damage occurred. They further emphasize that Orlofsky did not obtain an

---

[2] The retroactive effective of Section 128 was at issue in *Sweet Lake* but is not here.

undivided interest in the land where the wells were located, i.e., Reservoir B, and rely heavily on the introductory phrase in Article 128 "to the extent of the interest acquired. . . ."[3]  Plaintiffs' reply merely cites and quotes Unit Order 150-K which force-pooled Plaintiffs' tracts with other tracts into the two units designated as Reservoirs A and B.  (Rec. Doc. 49 at 5).

Orlofsky and Termo instead rely on the Louisiana Third Circuit's decision in *Robinson v. N. Am. Royalties, Inc.*, 463 So. 2d 1384 (La. App. 3 Cir. 1985), a case involving a sublessee's obligation to pay an overriding royalty interest.  Landowners leased 579 acres to the plaintiff who very shortly thereafter assigned his interest to North American Royalties, Inc. and reserved a small overriding royalty interest. The assignment included an extension clause providing that the overriding royalty interest reserved by the plaintiff would apply to new leases acquired by North American over the 579-acre tract.  North American then assigned 60% of its interest in the lease to Stone Oil Corporation to the extent the lease covered land located inside a designated production unit.  When North American failed to pay delay rentals, the lease expired to the extent it covered lands outside the production unit. The plaintiff sued North American and Stone claiming an entitlement to an assignment of his overriding royalty interest in the later Stone lease.  Just as in the instant case, Article 128 governed whether the plaintiff stated a cause of action. The court found no privity of contract between the plaintiff and Stone as to the lands outside the geographical boundaries of the production unit such that the later

---

[3] A further distinction of *Sweet Lake* is that the assignment to Orlofsky in this case pre-dated the drilling operations in Reservoir B.

lease to Stone was burdened by the extension clause and explained its rationale as follows:

> However, as heretofore noted, the sublease which Stone Oil acquired from North American only covered the land located within the boundaries of the 13,850 foot RA SU A production unit. Stone Oil did not acquire a sublease on the acreage situated outside of the production unit. Article 128 of the Mineral Code indicates that a sublessee becomes responsible to the original lessor and by analogy to the original lessee only "[t]o the extent of the interest acquired" by the sublessee. **As Stone Oil did not acquire an "interest" over the land outside the geographical boundaries of the production unit when it acquired the sublease from North American, it cannot be said that Stone Oil assumed any obligations to the original lessee or his successors in this area.**

463 So. 2d at 1388 (emphasis added).

The same reasoning applies here. Orlofsky did not acquire any interest in Reservoir B. By its express terms, the Lease Schedule attached to the assignment from Kinnickinnick to Orlofsky was limited to lands within Reservoir A and expressly disclaimed any interest in leased lands outside of Reservoir A, meaning Reservoir B where the wells at issue were drilled. Therefore, "the extent of the interest acquired" by Orlofsky does not encompass Plaintiffs' leased land in Reservoir B, so Orlofsky was improperly joined as a defendant.

The Notice of Removal also contended that Trinity Exploration & Production, LLC was improperly joined. (Rec. Doc. 1 at ¶¶ 23-31). Plaintiffs' petition named Trinity Exploration & Production, LLC as a defendant. (Rec. Doc. 1-1 at ¶ 4(J)). The Notice of Removal included an affidavit from Frank Cangelosi, manager of Trinity Exploration & Production, LLC attesting that Trinity Exploration & Production, LLC and Trinity Exploration & Production Company, LLC are different

and unrelated entities.  (Rec. Doc. 1-1 at ¶ 26; Rec. Doc. 1-5).  The Lease Abstract attached to the petition references Trinity Exploration & Production Company, LLC.  (Rec. Doc. 1-1 at Exhibit B).  According to Cangelosi, the assignment to the Trinity entity referenced in the petition was executed by an individual named David Wood in Sugar Land, Texas.  Therefore, according to Termo, Plaintiffs sued the wrong Trinity entity.  The Notice of Removal further notes that the interest acquired by the correct and unnamed Trinity entity was similar to the Orlofsky assignment in that it transferred an interest in the Reservoir A drilling unit. Plaintiffs' instant motion does not address this discrepancy.  The Court agrees that the wrong Trinity entity was named and finds that the actually-named Trinity entity, Trinity Exploration & Production, LLC, was improperly joined.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the MOTION TO REMAND (Rec. Doc. 30) filed by Plaintiffs Kim J. Hebert, Michael Shane Hebert, Sr., David Wayne Hebert, Cherie Hebert Serrette, Tanya Olivier, and Kim Joseph Serrette, as Trustee for the Lew Gregory Hebert 2018 Special Needs Trust, be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

Signed in Lafayette, Louisiana, this 4th day of September, 2024.

David J. Ayo
United States Magistrate Judge